MALLORY ASSOCIATES, INC., Plaintiff, *v.* BARVING REALTY CO., INC., et al., Defendants.

Supreme Court, Special Term, New York County, March 7, 1949.

*Harold Gilbert* and *Jules E. Gilbert* for plaintiff.

*Nathan Frankel* for defendants.

EDER, J. Motion to dismiss amended complaint upon the ground that it does not state facts sufficient to constitute a cause of action.

A like motion to dismiss the original complaint was granted, with leave to serve an amended complaint (*Mallory Associates v. Barving Realty Co.,* 193 Misc. 857).

The action is one in conversion to recover the sum of $65,000 deposited by the plaintiff, as tenant, with the corporate defendant, as landlord, under a written lease relating to real property

situated in Norfolk, Virginia, said deposit being made as security for the full and faithful performance by the tenant of all the terms, covenants and conditions of the lease on the tenant's part to be performed, it being charged that the defendant mingled and caused to be mingled said moneys so deposited with the personal moneys of the corporate defendant and this, it is alleged, constitutes a conversion.

The clause in the lease under which the deposit of security was made contains no provision creating or constituting the corporate defendant (hereafter styled defendant) the trustee of said fund, nor does it designate, create or constitute said sum, so deposited, a trust fund.

Under the provisions of the lease relating to the deposit, the defendant, as landlord, merely covenants to return said sum (which may be used toward the purchase of the leased premises) to the plaintiff, as tenant, in the manner therein provided for.

It is the plaintiff's position that despite the absence of any provision or stipulation creating or constituting the said sum a trust fund, and despite the absence of any provision or stipulation creating or constituting the defendant a trustee of said fund, the sum so deposited constitutes a trust fund and the defendant is the trustee thereof by virtue of the provisions of section 233 of the Real Property Law, and that the mingling of such moneys by the defendants with the personal moneys of the defendant is a conversion.

Section 233 provides: " *Money deposited or advanced for use or rental of real property.* Whenever money shall be deposited or advanced on a contract for the use or rental of real property as security for performance of the contract or to be applied to payments upon such contract when due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same, but may be disposed of as provided in section thirteen hundred and two-a of the penal law. Any provision of such a contract whereby a person who so deposits or advances money waives any provision of this section is absolutely void."

Prior to the enactment of section 233 the relationship of the landlord and tenant with respect to the deposit of security under a lease was held to be that of debtor and creditor in the absence of a provision or stipulation that the deposit of the security should be held intact or should constitute a trust fund (*Malco*

*Trading Corp.* v. *Mendelson-Silverman, Inc.*, 240 App. Div. 322; *Rambach* v. *Heights Theatres*, 239 App. Div. 203; *Jahmes Co.* v. *Propper*, 238 App. Div. 326; *Levinson* v. *Shapiro*, 238 App. Div. 158).

It seems clear, therefore, that plaintiff may only recover, in conversion, by virtue of the provisions of section 233 creating the deposit of the security a trust fund and creating the recipient thereof a trustee, prohibiting the mingling of such deposit with the funds of the recipient and declaring absolutely void any waiver of the provisions of said law.

Defendants assert that section 233 has application only to deposits of security made under leases relating to real property situated in this State, and that it has no application to a deposit of security made under a lease relating to real property located outside the State.

Upon the motion to dismiss the original complaint the view was expressed that section 233 was only applicable to deposits of security made under leases relating to real property located in this State and that the act had no extra-territorial effect.

It is now urged by plaintiff that this was an erroneous conclusion in that there is no indication, from the language of the statute, that it was the legislative intent to limit or restrict the application of section 233 to deposits of security made under leases relating to real property located in this State, and to deny its application where the lease related to real property situated without the State.

It is true that the language of section 233 contains no express limitation of specific restriction of its provisions to leases of real property located only in this State, and that it does not explicitly exclude from its application deposits of security made under leases relating to real property located outside the State. Nonetheless I am of opinion that such limitation and restriction were intended.

Where the intent and extent of a statute appear to be left doubtful by its language the court may resort to extrinsic evidence in the construction thereof and in this connection it may consider facts of contemporary history, the previous state of the law, the circumstances and conditions leading to its enactment and especially the evil which it was designed to correct and the remedy intended (*Matter of Hamlin*, 226 N. Y. 407; *Archer* v. *Equitable Life Assur. Soc.*, 218 N. Y. 18; *Matter of Clark*, 168 N. Y. 427; Black, Interpretation of Laws [2d ed.], § 91; Endlich, Interpretation of Statutes, §§ 28–29; Crawford, Statutory Construction [1940 ed.], §§ 210, 211, 225).

" But courts, in construing a statute, may with propriety recur to the history of the times when it was passed; and this is frequently necessary, in order to ascertain the reason as well as the meaning of the particular provisions in it." (*United States* v. *Union Pacific R. R. Co.*, 91 U. S. 72, 79.)

In *Matter of Hamlin* (*supra*, p. 414) the court said: " As bearing upon the intention of the legislature of this state in the enactment of a statute we may consider such historical or other facts as are reasonably within the scope of judicial cognizance."

In the *Archer* case (*supra*, p. 22) the court said: " We may consider, in addition to the language, the relevant conditions existing when it was adopted, the evils it was designed to remedy and the reasons for and the spirit of the enactment."

Prior to the depression real estate in this State had a substantial background of value and monetary return and landlords generally met their contractual obligation to the tenant to return deposits of security made under leases. With the advent of the financial depression and the tumbling of real property values, followed by a very large number of mortgage foreclosures, the financial standing of landlords became greatly impaired and in a great number of instances destroyed, with resulting insolvency, and the tenant suffered not alone the loss of his leasehold estate, but the loss of the deposit of his security, as well. The tenant had no protection whatever against this contingency and generally relied on the hope, much unfulfilled, that his landlord would be able to make return of the deposit of security.

The position of the tenant, in this respect, was precarious; he was subject to the danger of an eviction by paramount title, which frequently occurred, and the loss of his deposit of security, as well. This condition and evil became one of great gravity; it was particularly so in the city of New York, to which the courts alluded, from time to time, with suggestion for correction by legislative action.

In *People* v. *Horowitz* (138 Misc. 794), will be found judicial comment on the increasingly large number of lessees concerned with this situation.

In *Levinson* v. *Shapiro* (238 App. Div. 158, *supra*), it was pointed out that in origin the security stipulation found in leases was for the benefit of the landlord and that, generally speaking, it was not deemed necessary to insert therein language to protect the tenant because the financial condition of the landlord ordinarily was a sufficient guarantee of the return to the tenant of the deposit at the expiration of the term and that the ownership of the realty was in itself an assurance.

But the court recognized that the assurance of return of the deposit to the tenant had become impaired, remarking (p. 162) " During the present shrinkage in realty values in New York City, the financial stability of the landlord has in many instances been weakened ".

And in *Goodman* v. *Schached* (144 Misc. 905), the court suggested remedial legislation to protect the tenants, similar to that enacted for the protection of laborers, materialmen, and the like, by creating a trust in the deposits of security under a lease.

This was the situation and condition which led to the passage of section 233 of the Real Property Law and in enacting this statute the Legislature was dealing with deposits of security made under leases relating to real property located in this State; it was concerned with and was dealing with a condition and evil existing here and not elsewhere.

Nothing appears to indicate that the Legislature had any concern with respect to deposits of security under leases relating to real property situated in other States. It is reasonable to assume that if it was the intention of the Legislature to extend the application of this statute to deposits made under leases relating to real property located in other States that it would have indicated and expressed such an intention.

Plaintiff argues, also, that it seeks to recover upon a personal covenant — the obligation of the defendant, under the lease, to return the security, and that this is in the nature of a transitory action and upon this theory the action is maintainable. If this be the theory then it cannot sound in conversion but is then an action on contract and defendants' liability would then rest on a debtor and creditor relationship, for, as mentioned, the clause in the lease respecting the deposit of security does not create a trust fund and does not create or constitute the defendant the trustee thereof.

In the light of contemporary history and the circumstances and conditions leading to the enactment of section 233, no reason manifests itself to warrant or justify a construction that it was the legislative intent to include within the ambit of its provisions deposits of security made under leases relating to real property located in other States as well as those made under leases relating to real property situated in this State.

The amended complaint is predicated on the provisions of section 233 and as this statute is without application to the facts alleged in the amended complaint, it must follow as a necessary

corollary and legal sequence that the amended complaint fails to set forth facts sufficient to constitute a cause of action.

The motion to dismiss the amended complaint is, accordingly, granted.

Settle order.