OPINION OF THE COURT
Mara T. Thorpe, J.
This proceeding was initiated on May 12, 1986, by the Commissioner of Social Services pursuant to Social Services Law § 392 to review the foster care status of Ida Christina L. It is the second such proceeding which has been filed. The first was tried jointly with a custody proceeding between Ida’s *192 parents and was concluded on May 22, 1985, with an order continuing foster care for one year and directing that Little Flower Children’s Services place Ida on trial discharge to her father in June 1985, and obtain court approval prior to a final discharge of the child. Ida was placed in her father’s home as directed and the current petition states that the Commissioner now seeks the court’s approval of a final discharge to him.
Named in the petition as persons entitled to notice of the proceeding are Ida’s former foster parents, Innocencia and Harrain F. They appeared as parties in the first foster care review proceeding, at which time Ida resided in their home. They have also appeared in this proceeding and although Ida has neither lived with nor seen them for the past year,* they claim that they continue to enjoy the right to party status in any foster care review proceeding involving Ida by virtue of Social Services Law § 392 (4) (c). The Law Guardian has moved for an order denying them such standing.
Social Services Law § 392 (4) provides in pertinent part:
"Notice of the hearing * * * shall be given and a copy of the petition shall be served upon the following, each of whom shall be a party entitled to participate in the proceeding * * *
"(c) the foster * * * parents in whose home the child resided or resides at or after the expiration of a continuous period of twelve months in foster care”.
The foster parents argue, in essence, that the phrase "a continuous period of twelve months in foster care” must be read broadly to mean any period of foster care of the requisite length and, thus, that all foster parents, both current and former, who have had a child in care for such period are entitled to party status in a foster care review proceeding. The essence of the Law Guardian’s position is that this statute must be narrowly interpreted as referring only to those foster parents who have cared for the child for the requisite period of time and who are actually doing so at the time of the review proceeding. The wording of the statute is susceptible of either interpretation.
Research has revealed only one case which has touched on the question now before this court. In Matter of Dionisio R. (81 Misc 2d 436), the court stated that although the wording in Social Services Law § 392 (4) (c) is not clear, it would permit *193 both the current and former foster parents of the subject children to appear as parties in their foster care review proceeding. However, the court did not explain why it concluded that the language in that section was intended to include all persons who had served as a child’s foster parent for the specified period of time, and it may well be that the issue of who was entitled to party status was not pressed in that matter.
It is fundamental that the duty of a court in construing a statute is to ascertain the intention of the Legislature, and when the words are ambiguous, as they are here, resort must be had to other available aids to statutory construction. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92.) It is also fundamental that all parts of a statute are to be compared and construed together to determine the legislative intent (McKinney’s Cons Laws of NY, Book 1, Statutes § 97; Levine v Bornstein, 4 NY2d 241), particularly those provisions which relate to the same class of persons or to the same or closely allied subjects and are thus to be regarded as in pari materia (McKinney’s Cons Laws of NY, Book 1, Statutes § 221 [b]; Ford Motor Credit Co. v Hickey Ford Sales, 62 NY2d 291).
Some guidance in ascertaining the Legislature’s intent in enacting Social Services Law § 392 (4) (c) may be found by considering Social Services Law § 383 (3). The latter section is in pari materia with section 392 (4) (c), being a general grant of authority for foster parents who have cared for a child for a specified time to apply for placement of the child with them for purposes of adoption and to participate in any proceeding involving its custody. The second paragraph of that section was added to the Social Services Law by the same Legislature which added the language in Social Services Law § 392 (4) (c) which is in issue here. (See, L 1972, ch 645, as amended by L 1972, ch 646; L 1972, ch 940.) The rule that statutes which are in pari materia are to be construed together applies with particular force where the two provisions are enacted at the same session of the Legislature. (Town of Islip v Powell, 78 Misc 2d 1007.)
Social Services Law § 383 (3) provides as follows:
"Any adult husband and his adult wife and any adult unmarried person, who, as foster parent or parents, have cared for a child continuously for a period of twelve months or more, may apply to such authorized agency for the placement of said child with them for the purpose of adoption, and if said *194 child is eligible for adoption, the agency shall give preference and first consideration to their application over all other applications for adoption placements. However, final determination of the propriety of said adoption of such foster child shall be within the sole discretion of the court, as otherwise provided herein.
"Foster parents having had continuous care of a child, for more than twelve months, through an authorized agency, shall be permitted as a matter of right, as an interested party to intervene in any proceeding involving the custody of the child. Such intervention may be made anonymously or in the true name of said foster parents.” (Emphasis supplied.)
Although the phrase defining the class of foster parents which is contained in the first paragraph of this section is slightly different from that contained in the second paragraph, and although each of these phrases differs slightly from that defining the class of foster parents contained in Social Services Law § 392 (4) (c), the key word in the latter two phrases is the adjective "continuous” and in the first it is the adverb "continuously”. Nothing in the phrasing or substance of any of these paragraphs or in their legislative history indicates that the Legislature intended to establish different classes of foster parents in these provisions of the Social Services Law, and each of these phrases is susceptible of the same alternative interpretations: each can be read broadly as including all foster parents who ever gave continuous care to a child for a specified period, and each can be read narrowly as referring only to those foster parents who have cared for a child for the requisite period and who are actually caring for the child at the time of the event described (i.e., the application for placement of the child for purposes of adoption, the proceeding involving the child’s custody, and the foster care review proceeding).
In Matter of Anonymous (77 Misc 2d 950) the court had occasion to consider these alternative interpretations of the language in the second paragraph of Social Services Law § 383 (3). There, foster parents who had cared for a child for a continuous period of 57 months sought to intervene in the child’s adoption proceeding some 13 months after the child had been removed from their home. The court held that the most logical interpretation of the statute is that it pertains only to those foster parents caring for the child at the time of the custody dispute and thus refused to consider the former foster parents as parties entitled to seek custody of the child.
*195 The conclusion of the court in Matter of Anonymous (supra) that the "continuous care” clause in the second paragraph of Social Services Law § 383 (3) was intended to be interpreted narrowly is supported by analysis of the provisions of the first paragraph of that section. That paragraph states that the class of foster parents referred to may apply for placement of the foster child with them for the purpose of adoption and that their application shall be given a preference and "first consideration * * * over all other applications for adoption placements.” If the class of foster parents referred to includes all foster parents who had ever cared for the child continuously for the period of time specified, there could be two or more sets of foster parents claiming the preference. In that case, it would not be possible for the agency to comply with the statute and give each of them "first consideration * * * over all other[s]”. Since a statute should not be interpreted as requiring an impossibility (Matter of Powell v Shepard Niles Crane & Hoist Corp., 25 Misc 2d 485; 56 NY Jur, Statutes, § 209, at 668), the only logical interpretation of the language defining the class of foster parents is the narrow interpretation that the class includes only those caring for the child at the time of the application for placement for adoption.
The conclusion that the "continuous care” language in Social Services Law § 383 (3) should be given a narrow interpretation also finds support in the Laws of 1979 (ch 611). It is established that the Legislature may declare by statute the true meaning of an ambiguous statute previously enacted, and where it passes a law indicating what its intent and purpose had been in passing an earlier act, the subsequent statute "is entitled to great weight and respect of the courts as a legislative construction of ambiguous phraseology.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 75, p 161; Matter of Chatlos v McGoldrick, 302 NY 380; Matter of Mugavin v Nyquist, 78 Misc 2d 914, affd 48 AD2d 727, affd 39 NY2d 1003; Matter of Kiley v Kennedy, 16 Misc 2d 969.) Application of the rules of construction of the Laws of 1979 (ch 611, §§ 6, 13) leads to the conclusion that the Legislature sought therein to clarify the eligibility of foster parents for the rights previously conferred in Social Services Law § 383 (3).
Laws of 1979 (ch 611, § 6) amends Social Services Law § 383 (3) by reducing the period of "continuous care” from two years to 18 months in each of the two undesignated paragraphs of that section. No change was made in the language defining the class of foster parents referred to therein. Significantly, *196 however, section 13 of chapter 611 states in relevant part: "provided, however, that section six hereof shall be applicable only to persons who are foster parents on or after the effective date of such section and only with respect to children who are in the care of such foster parents on or after such date” (emphasis supplied).
If the class of foster parents designated in section 383 (3) as originally enacted includes all those who had ever had a foster child in their care for the requisite period of time, regardless of when the child was with them, the effect of the proviso contained in section 13 of chapter 611 would be the sudden exclusion from the class of all of those who did not have the child in their care on or after the effective date of section 6 of that chapter, or stated differently, the effect would be tantamount to a repeal of the original broad definition of the class of foster parents and enactment of a narrower definition of the class. In contrast, if the class of foster parents designated in section 383 (3) as originally enacted includes only those who are actually caring for a child at the time of the application to adopt the child or the proceeding involving its custody, the proviso contained in section 13 of that chapter would not effect any substantive change in the law.
It is a rule of statutory construction that a proviso is not to be construed as effecting independent legislation in the absence of a clearly evinced legislative intent to the contrary. (McKinney’s Cons Laws of NY, Book 1, Statutes § 212; Matter of Livingston, 14 AD2d 264.) Nor is a repeal of an earlier statute to be implied from a subsequent enactment unless the two are in such conflict that both cannot be given effect. (People v Newman, 32 NY2d 379.) Indeed, "[t]he absence of an express provision in a later statute, for repeal of an earlier one, gives rise to a presumption that repeal was not intended” (Matter of Biscardi v Levitt, 54 AD2d 1016, 1017).
If the Legislature had intended to change the definition of the class of foster parents given rights under Social Services Law § 383 (3) by Laws of 1979 (ch 611, § 13), it surely would have done so in a less obscure, more direct manner. The more persuasive view of the function of the proviso in section 13 is that it was intended to clarify the Legislature’s initial intention to create a class of foster parents limited to those actually caring for a child at the time of the application to adopt or the proceeding involving the child’s custody and to exclude the possibility of a misinterpretation of the extent of the definition of the class.
*197 For the foregoing reasons, the court has concluded that the Legislature intended to designate identical classes of foster parents in Social Services Law § 383 (3) and § 392 (4) (c) and, further, that the class referred to in each of those sections was intended to encompass only those foster parents who have cared for the child for the requisite period of time and who are actually doing so at the time of the event specified. Therefore, the court holds that Mr. and Mrs. F. do not have standing to participate in this foster care review proceeding since they have not had Ida Christina in their care during the past year. Accordingly, the motion is granted.

 The affirmation in opposition to the instant motion submitted by the foster parents’ attorney acknowledges that the foster parents have not seen the child for a year.